```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION

RICHARD PETERSON #20090007816,  )
                                )
               Plaintiff,       )
                                )
     v.                         )    No.  10 C 5681
                                )
THOMAS DART, et al.,            )
                                )
               Defendants.      )
```

MEMORANDUM ORDER

Counsel for all defendants in this Section 1983 case have filed their Answer to the Second Amended Complaint ("SAC") brought against them by Richard Peterson ("Peterson"). For the most part that responsive pleading is meticulous in dealing with the SAC, which has been filed on Peterson's behalf by his appointed pro bono counsel--the one exception is defense counsel's assertion of qualified immunity as a claimed affirmative defense ("AD"), the subject to which this sua sponte memorandum order is addressed.

This Court finds it troubling that the lawyers for governmental defendants at every level of the state's law offices--whether Assistant Attorneys General, Assistant State's Attorneys or Assistant Corporation Counsel--have not really come to grips with the evolution of qualified immunity as a purported AD. To the extent that their filings may reflect office policy, a fresh look by the top echelon of those offices may be overdue.

In that respect it must not be forgotten that the

fundamental purpose of qualified immunity for state actors was and is a desire not only to insulate them from liability under appropriate circumstances but also to preclude their having to defend actions at all. Hence where a plaintiff's plausible allegations and reasonable inferences from those allegations must be taken as gospel (which is the required posture at the threshold of litigation), so that the issues need an evidentiary airing at trial to decide whose version is correct, there has been increasing judicial recognition that a purported qualified immunity AD advanced at the very outset of the case is premature by definition.

Thus <u>Pearson v. Callahan</u>, 555 U.S. 223, 232 (2009) has made it plain that the first step in the qualified immunity analysis calls for acceptance of the complaint's allegations as true:

> First, a court must decide whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right.

If that step is satisfied, the next question--"whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct" (<u>id</u>.)--is a question of law.

Here the second factor has not been challenged by defendants, and the question whether plaintiff's factual allegations are or are not true must await the ultimate evidentiary determination (whether through trial or via summary

judgment).[1]  As Pearson, 550 U.S. at 238-39 has said, "[w]hen qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claim or claims may be hard to identify."  And as then Judge (now Chief Judge) Easterbrook of our own Court of Appeals had observed even more pointedly some years earlier in his concurrence in Jacobs v. City of Chicago, 215 F.3d 758, 775 (7th Cir. 2000):

> Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal.

It may perhaps be that qualified immunity will become a potentially viable affirmative defense at some future point in the case, but now is certainly not the time.  Accordingly it is stricken from the Answer.

_____
Milton I. Shadur
Senior United States District Judge

Date:  February 3, 2012

---

[1] At that point, of course, defendant will have been found liable or not liable--and qualified immunity will have become moot.